# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-230V

| | | |
|---|---|---|
| JENNIFER and MICHAEL, BARRIOS, parents of minor child, B.H.B., | * * * * | Chief Special Master Corcoran |
| Petitioners, | * | Filed: September 18, 2025 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES | * * | |
| Respondent. | * | |

*David P. Murphy,* Greenfield, IN, for Petitioners.

*Sarah C. Duncan,* U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION GRANTING AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On February 16, 2023, Jennifer and Michael Barrios filed a petition on behalf of their minor child, B.H.B., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioners allege that B.H.B. developed type 1 narcolepsy after receipt of two doses of the influenza ("flu") vaccine on September 24, 2020, and October 27, 2020, respectively. Petition at 1–3 (ECF No. 1). A decision denying entitlement was entered on August 22, 2024. *See* Decision, dated Aug. 22, 2024 (ECF No. 21) ("Decision"). Petitioner moved for review of my decision (ECF No. 22), but the motion was denied. *See* Judge Vaccine Order/Opinion, dated Feb. 18, 2025 (ECF No. 26).

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioners have now filed a motion for a final award of attorney's fees and costs. Motion, dated July 28, 2025 (ECF No. 29) ("Mot."). This is their sole such motion. Petitioners request a total of $32,975.50 in attorney's fees and costs ($11,573.50 in fees, plus $21,402.00 in costs) for the work of attorney David P. Murphy, a paralegal, and an expert's assistance. Mot. at 1, 2. Respondent reacted to the fees request on August 4, 2025. *See* Response, dated Aug. 4, 2025 (ECF No. 30) ("Resp."). Respondent defers to my discretion as to whether the statutory requirements for an award of attorney's fees and costs are met in this case, and if so, the calculation of the amount to be awarded. Resp. at 2, 5. Petitioners did not file a reply.

For the reasons set forth below, I hereby **GRANT** Petitioners' motion in part, awarding fees and costs in the total amount of **$28,172.50**.

## ANALYSIS

### I. Petitioners' Claim had Reasonable Basis

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis[3] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

---

[3] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

Although Petitioners' claim was ultimately unsuccessful, I find it possessed sufficient objective bases to entitle them to a fees and costs award. There was record evidence that B.H.B. experienced a variety of symptoms consistent with type 1 narcolepsy after the relevant vaccinations, and the medical opinion they obtained had *some* minimal support for it. However, I have made clear in a number of prior published decisions my experience-based view that claims that the flu vaccine "can cause" narcolepsy are grounded in unreliable science and therefore untenable. And Petitioners were unable to identify any more recent medical or scientific findings that would call for reevaluating that view. Hence, the matter was appropriately dismissed, with the Motion for Review also proving unsuccessful for those same reasons.

Nevertheless, Petitioners did obtain opinions to support their claim from highly-qualified experts, and they did make more than a good faith effort to meet my reasoned concerns about the validity of the theory presented. This, plus the fact that elements of the claim possessed objective support, militates for a favorable reasonable basis finding. And I find no other reason to deny fees despite the claim's disposition. (I note, however, that counsel should take care not to continue to bring in the future comparable claims involving the flu vaccine and narcolepsy, absent truly new medical or scientific developments in the field).

## II.   Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

---

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioners request the following rates for their attorney and support staff, based on the years work was performed:

|  | 2021 | 2022 | 2023 |
|---|---|---|---|
| **David P. Murphy (Attorney)** | $509.00 | $509.00 | $509.00 |
| **Paralegals** | $172.00 | $172.00 | $172.00 |

ECF No. 29-1 at 2–4; ECF No. 29-1 at 2–5.

Mr. Murphy practices in Greenfield, Indiana, which is not in forum. Therefore, some discussion on the reasonableness of his requested fees is required. I have previously determined in other Program cases that Mr. Murphy's fee amount for the years of 2021 and 2022 should be $455.00 and $470.00, respectively, and I shall follow that determination in the present case, incorporating my reasoning herein. *Woodcock v. Sec'y of Health & Hum. Servs.*, No. 21-0851V, 2023 WL 4401129, at *2 (Fed. Cl. Spec. Mstr. June 6, 2023). I also find no grounds for adjusting the total hours devoted to this matter.

But no special master has had the opportunity to set Mr. Murphy's rate for 2023. When determining the appropriate hourly rate for an attorney, I take into account the Office of Special Masters's Hourly Rate Fee Schedules, and I consider the additional factors set forth in *McCulloch v. Sec'y of Health and Hum. Services*, No. 09–293V, 2015 WL 5634323, at *17 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) (experience in the Vaccine Program, overall legal experience, the quality of work performed, and reputation in the legal community and community at large).

Mr. Murphy has been a licensed attorney since 1972, giving him over fifty years of experience. *See* Mot. at 1. Mr. Murphy has also litigated approximately twenty Vaccine Program cases since 1999. Previously, however, Mr. Murphy has requested fees that either surpass the maximum or are close to the maximum of the Vaccine Program's Attorneys' Forum Hourly Rate Fee Schedule. *See Woodcock*, 2023 WL 4401129, at *2–3 (requesting over the maximum hourly rate the Vaccine Program's Attorneys' Forum Hourly Rate Fee Schedule allowed for an attorney with thirty years of experience in 2020 and requesting the maximum hourly rate amount for an attorney with thirty-one years' experience in 2021).

For these reasons, I will set Mr. Murphy's 2023 rate at $485 per hour, reflecting a $15.00 increase from his awarded 2022 hourly rate of $470.00. This number is consistent with the 2023 Attorneys' Forum Hourly Rate Fee Schedules. *See* 2023 Attorneys' Forum Hourly Rate Fee Schedules at https://www.uscfc.uscourts.gov/sites/cfc/files/osm_hourly_rate_2023.pdf (last visited Sep. 8, 2025). Because of these hourly rate adjustments, Mr. Murphy's fee award is reduced by **$472.50**.[5]

Similarly, Mr. Murphy's requested paralegal rates are also high for the relevant years (although I make no adjustments for the total amount of paralegal time devoted to the matter). In *Woodcock*, I lowered Mr. Murphy's paralegal's rate to $157.00 and $162.00 for the years of 2021 and 2022, respectively. *Woodcock,* 2023 WL 4401129, at *2. I shall act consistent with that determination. For work performed in 2023, I will award an increased rate of $167.00, which is in line with the 2023 Vaccine Program's Attorneys' Forum Hourly Rate Fee Schedule. *See* 2023 Attorneys' Forum Hourly Rate Fee Schedules at https://www.uscfc.uscourts.gov/sites/cfc/files/osm_hourly_rate_2023.pdf (last visited Sep. 8, 2025). This further reduces the fee award in this case by **$148.50**.[6]

### III.   Calculation of Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum.*

---

[5] Determined by: (($509.00 - $455.00) x 1.1 hours worked in 2021)) + (($509.00 - $470.00) x 1.3 hours worked in 2022)) + (($509.00 - $485.00) x 15.1 hours worked in 2023)) = $472.50.

[6] Determined by: (($172.00 - $157.00) x 2.5 hours worked in 2021)) + (($172.00 - $162.00) x 9.2 hours worked in 2022)) + (($172.00 - $167.00) x 3.8 hours worked in 2023)) = $148.50.

*Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $21,402.00 in outstanding costs, including the filing fee, transcript fee, and costs associated with expert Dennis Lacey, MD. *See* Mot. at 4; ECF No. 29-3 at 2; ECF No. 29-4 at 3. Dr. Lacey's costs are the greatest component of this sum, so I shall address them first.

Dr. Lacey's invoice seeks $20,910.00 for his services. ECF No. 29-3 at 2. But his opinions did not meaningfully contribute to the Plaintiffs' case. I previously had informed the Petitioners that I had denied entitlement in other similar flu vaccine/narcolepsy cases, and encouraged them to identify *new* evidence that presented a new causation theory or filled in some holes to bolster a theory I had previously rejected. *See* Decision at 1–2. But as noted in my Decision, Dr. Lacey did not offer any new scientific evidence or medical findings that have not been previously discussed in similar cases involving narcolepsy as an alleged vaccine injury. *Id.* at 5.

In addition, the costs of Dr. Lacey's services were excessive for what was done, and have not been sufficiently substantiated. Dr. Lacey only reviewed B.H.B's medical records and discussed his opinions with Petitioners' counsel. Petitioners' counsel did include portions of their discussion in Petitioners' brief, but Dr. Lacey did not write a report or testify at a hearing. *See* Petitioners' Response, dated Jan. 4, 2024 (ECF No. 20) at 7–9. And Dr. Lacey did not submit hourly invoices, meaning his charges are not substantiated with evidence. *See, e.g.*, *J.S.,* 2025 WL 2463263, at *5; *Clark v. Sec'y of Health & Hum. Servs.*, No. 17-1553V, 2023 WL 2319374, at *6 (Fed. Cl. Mar. 2, 2023); *Brunker v. Sec'y of Health & Hum. Servs.*, No. 18-683V, 2023 WL 21255 (Fed. Cl. Spec. Mstr. Nov. 29, 2022); *Drobbin v. Sec'y of Health & Hum. Servs.*, No. 14-225V, 2022 WL 1515024, at *4 (Fed. Cl. Spec. Mstr. Apr. 28, 2022). This can be grounds for complete denial of this kind of cost.

Special Masters may assess the quality of the work performed and the overall persuasiveness when determining expert fees. *See Gruber v. Sec'y Health & Hum. Servs.*, 91 Fed. Cl. 773, 796-798 (2010) (holding that the special master was justified in reducing expert fees given the "level of work performed") *Saxton v. Sec'y Health & Hum. Servs.*, 3 F.3d 1517, 1521 (noting that it is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done"). I am generally reluctant to deny compensation to experts who have attempted to assist a petitioner with her claim, no matter my assessment of the expert's overall quality. But I have previously reduced costs for experts who excessively charged for their work, whose efforts were unhelpful, or who did not properly invoice their time. *See, e.g., J.S. v. Sec'y of Health & Hum. Servs.,* No. 16-1083V, 2025 WL 2463263, at *5–6 (Fed. Cl. July 30, 2025); *Monte v. Sec'y of Health & Hum. Servs.*, No. 21-1960V, 2024 WL 1640006, at *4 (Fed. Cl. Mar. 21, 2024); *Martin v. Sec'y of Health & Hum. Servs.*, No. 15-789V, 2020 WL 8674683, at *4 (Fed. Cl. Dec. 8, 2020).

Based on all of the foregoing, I find it appropriate to reduce Dr. Lacey's costs by 20%. This results in a further reduction of **$4,182.00**.[7]

Finally, Petitioners also seek $492.00 in out-of-pocket litigation expenses, reflecting the filing fee and the conference transcript. Mot. at 4. As stated in Section X of the Guidelines for Practice in the Vaccine Program, "before reimbursement of costs is made, sufficient supporting documentation, such as invoices, receipts, and billing statements, must be provided." Documentation was provided for the Court's filing fee, and I grant that sum in full. ECF No. 29-4. However, Petitioners did not include the receipt for the status conference transcript. I will in this case allow this sum, but counsel in the future risks its disallowance if not substantiated (along with any other comparable costs).

## CONCLUSION

In the exercise of the discretion afforded to me in determining the propriety of a final fees award, And after consideration of the evidence relevant to the question, I **GRANT** Petitioners' Motion for Attorney's Fees and Costs in part, and award a total of **$28,172.50 (reflecting $10,952.50 in attorney's fees and $17,220.00 in costs) to be paid through an ACH deposit to Petitioners' counsel's IOLTA account for prompt disbursement.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Determined by: $20,910.00 x 0.2 = $4,182.00.

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.